IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DELILAH WILLIAMS,<br><br>Defendant. | CR. NO. 06-00079 JMS<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 2933 |

# ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 2933

## I. INTRODUCTION

Defendant Delilah Williams ("Defendant") moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from FCI Dublin, California. ECF No. 2933. The court determines that Defendant has failed to show extraordinary and compelling reasons to warrant release, and, even if she had, the court would deny the motion based on a consideration of the applicable 18 U.S.C. § 3553(a) factors. Thus, based on the following, the motion is DENIED.

## II. BACKGROUND

Defendant is a 36 year-old inmate incarcerated at FCI Dublin. Defendant began serving her sentence in July 2005, and is scheduled for release

1

from FCI Dublin on March 19, 2023.  *See* ECF No. 2933 at PageID #66871; https://www.bop. gov/inmateloc/ (last visited August 10, 2020).

On December 6, 2006, Defendant pled guilty to Count 2 of a First Superseding Indictment charging her with felony murder in the first degree in perpetration of part of a pattern and practice of assault and torture relating to the death of her five-year-old stepdaughter, Talia Williams.  ECF Nos. 136, 184-86.  The plea agreement, pursuant to Federal Rule of Civil Procedure 11(c)(1)(C), included an agreed-upon sentence of twenty years.  ECF No. 186-3 at PageID #654.  And the plea agreement was unusual—because the offense carried a statutory mandatory minimum of life imprisonment, the plea agreement required the United States to move the court to depart downward pursuant to 18 U.S.C. § 3553(e) to a sentence of twenty years if the defendant provided substantial assistance in the investigation and prosecution of her husband and co-defendant, Naeem Williams ("Naeem").  *Id*. at PageID #669-670.  Defendant did cooperate, and testified in Naeem's federal capital trial on March 14, 18, and 19, 2014.  ECF Nos. 2448, 2450 & 2461.  Ultimately, the court accepted the Rule 11(c)(1)(C) plea agreement, and on July 8, 2014, imposed a sentence of 20 years followed by 5 years of supervised release.  ECF Nos. 2871, 2882.

Defendant submitted a request for compassionate release to FCI Dublin's Warden, which was denied on June 22, 2020.  *See* ECF No. 2933-3 at Page ID #66899.

Defendant, represented by counsel, filed the instant motion for compassionate release on July 20, 2020, seeking a sentence reduction to time served with the imposition of home confinement upon release.  ECF No. 2933 at PageID #66891.  On August 5, 2020, the Government filed its Response.  ECF No. 2939.  The court decides the motion without a hearing pursuant to Local Rule 7.1(c).

### III.  **DISCUSSION**

**A.     Legal Standard**

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018,[1] which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

> forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction;
> > . . . .
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Thus, the court may reduce Defendant's sentence if: 1) Defendant has exhausted the required administrative remedies; 2) Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and 3) the reduction is consistent with applicable Sentencing Commission's policy statements.  Here, the Government concedes the first prong—Defendant has exhausted her administrative remedies.  ECF No. 2939 at PageID #67122.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, provides, as relevant to Defendant, that the court may grant a motion for compassionate release only if, after consideration of the applicable § 3553(a) factors, the court determines that extraordinary and compelling reasons exist to warrant a sentence reduction, the defendant is not a danger to another person or to the community, and a sentence reduction is consistent with the policy statement.

Guideline §1B1.13 provides three specific examples of extraordinary and compelling reasons for compassionate release—the defendant's terminal medical condition, deterioration of health due to advanced age, and extenuating family circumstances—along with a fourth, catch-all provision granting discretion to the Bureau of Prisons ("BOP") Director to determine whether other extraordinary and compelling reasons exist.  *See* Guideline § 1B1.13 n.1(A)-(D).  In a detailed analysis, this court previously determined that the "discretion to determine whether 'other' extraordinary and compelling reasons exist granted by [Guideline § 1B1.13 n.1(D)] to the BOP Director applies equally to the court when ruling on motions for compassionate release."  *United States v. Hernandez*, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020).  The court incorporates that analysis here.

**B.      Extraordinary and Compelling Reasons Do Not Warrant Release**

Defendant bears the burden to establish extraordinary and compelling reasons to warrant compassionate release.  *See, e.g.*, *United States v. Bolden*, 2020 WL 4286820, at *3 (W.D. Wash. July 27, 2020); *United States v. Proudfoot*, 2020 WL 4284128, at *4 (D. Or. July 27, 2020).  Here, Defendant contends that she is at grave risk of severe illness or death from the COVID-19 pandemic because she is: (1) severely obese (with a BMI between 40.1 and 42.2), is prediabetic, and has

been diagnosed with hypertension (currently in remission), *see* ECF No. 2933 at PageID #66872, 66878; and (2) at risk while incarcerated at FCI Dublin, *id*. at PageID #66876-77.

The court addresses each of these arguments and finds that Defendant has not shown that extraordinary and compelling reasons warrant her release from custody.

As to her first contention, the court agrees that Defendant has an underlying medical condition that places her at an increased risk for severe illness from COVID-19. According to the Centers for Disease Control and Prevention ("CDC"), individuals with "[o]besity (body mass index [BMI] 30 or higher" fall into this high risk category. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 10, 2020). A person with hypertension might be at an increased risk. *Id*. In short, it is beyond question that Defendant's severe obesity places her at an increased risk and her hypertension might place her at an increased risk.

But, even with an increased risk, Defendant has not demonstrated that FCI Dublin is unsafe. The Bureau of Prisons ("BOP") reports, as of August 10, 2020, 0 inmates and 1 staff member with "confirmed active cases" of COVID-19 at FCI Dublin. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page)

(last visited August 10, 2020).² And although Defendant quibbles with the exact number of prior and present cases at FCI Dublin, she offers no evidence that FCI Dublin has had in the past or has now more than a very few cases.

The court concludes based on the existing evidence that Defendant has failed to demonstrate that extraordinary and compelling reasons warrant release. Although Defendant's severe obesity (and perhaps hypertension) place her at a higher risk if she contracts COVID-19, she has not shown that FCI Dublin is an unsafe BOP facility.³ And to the extent that Defendant makes a more generalized argument regarding the risk of contracting COVID-19 in a BOP facility, the court disagrees. *See, e.g.*, *United States v. Drummondo-Farias*, ___ F. Supp. 3d ___, 2020 WL 2616119, at *5 (D. Haw. May 19, 2020) ("Additionally, '[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the

---

² FCI Dublin presently houses 816 female inmates. *See* bop.gov/locations/institutions/dub/ (last visited August 10, 2020).

³ Several courts have determined that obesity—alone or paired with hypertension—does not by itself provide adequate grounds for compassionate release. *See e.g.,United States v. Lavatai*, 2020 WL 4275258 (D. Haw. July 24, 2020); *United States v. Wilfred*, 2020 WL 4365531, at *5 (E.D. La. July 30, 2020); *United States v. Gordon*, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020); *United States v. Whiteman*, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020; *United States v. Takewell*, 2020 WL 4043060, at *3 (W.D. La. July 17, 2020); *United States v. Wax*, 2020 WL 3468219, at *2-3 (D.N.J. June 25, 2020).

Sentencing Commission's policy statement[.]'") (quoting *United State v. Eberhart*, ___ F. Supp. 3d ___, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)).

## C.     Section 3553(a) Factors

Even if Defendant had demonstrated the required extraordinary and compelling reasons exist to warrant compassionate release, the court would deny the motion based on a consideration of the § 3553(a) factors.

As relevant to this case, the § 3553(a) factors include: 1) the nature and circumstances of the offense and the history and characteristics of the defendant;[4] and 2) the need for the sentence imposed: (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(1)-(2).  And under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).

---

[4] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including her rehabilitation while in custody.  *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

Defendant argues that a consideration of § 3553(a) factors demonstrate post-offense rehabilitation (for example, that she has taken 166 courses while incarcerated and has served as an instructor and GED tutor), that she has family support, and that she is considered by BOP to be a "minimum risk for recidivism" and has a "low" security classification within BOP.  ECF No. 2933 at PageID #66871.  Even accepting all of these arguments as true, the court would nonetheless find that the motion should be denied given the nature of the offense conduct and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.

Defendant's testimony at Naeem's trial established beyond any doubt her role in Talia's murder, and her absolute callous and depraved actions in the torture of Talia over a period of months.  At her sentencing, the court summarized Defendant's role in Talia's torture over this several month period:

> But what you did is undeniable.  From your testimony on that stand that went on several days, it became clear to me that you wanted Talia to suffer.  That in the end you were okay with her dying.  That was the overall impression you left with me.  To you Talia was just a nuisance, a problem in the household that needed to go away.  And week after week after week you jointly tortured this child.  And the hardest part of your testimony in my regard, from my perspective sitting here is that when you did that it almost seems as if it provided you with a sense of satisfaction, with relief that you would beat her.  That it satisfied a need of yours.

9

And so even after the fatal blow on July 16th that you did not engage in with Talia, put in that bare room of hers, no bed, no blanket, no furniture, no toys, no anything, a single poster on the wall, she's left there while still breathing, while you and Naeem take care of business. Still at that point in time certainly knowing this girl was dead or was dying and in dire need of medical attention immediately, you waited. That was a joint decision the two of you made, to wait. Because throughout this time period your comfort, your needs greatly outweighed those of Talia.

And your testimony as to what happened on June 29th, it's hard to put into words, that testimony. To provide sort of a snapshot of what that testimony was. Shocking, horrific, unbelievable, inhumane. You testified to the following: After beating her with a belt on that day, quote, I started stomping on her and I just continued stomping on her until I felt like a bone cracked under my foot and she ended up defecating on herself.

Well, what happens then? You get more upset. You put her on the toilet downstairs and push on her stomach. And Talia, doing what any human being would do, dug her nails into you, and you got more upset. And you testified, I started pushing harder on her stomach and then I pushed so hard to the point the toilet broke or it was leaking. And then I got mad even more. And I grabbed her by the hair and I slammed her against the wall leaving a dent. And then I told her to go back upstairs to her room and I told her to stay in there. And then the most shocking part of all this testimony: And I left to go get my nails done.

And you testified as to the events and the beating with the same calmness that you explained you went and got your nails done. As if you deserved a special treat after inflicting the pain you did on that little girl.

10

> This testimony was absolutely chilling. I remember sitting right here during this testimony and thinking to myself: This courthouse has certainly never heard testimony of this sort before. And probably very few courthouses anywhere have. And I say that based on two different reasons. First, the substance of what was being said. The cruel, inhumane, depraved, unimaginable treatment that's just hard to put in words.
>
> And second, the way it was said. Its tone. The matter-of-fact statements that you made, barely shedding a tear throughout days of testimony. Again, leaving me with the impression that you enjoyed those beatings. You enjoyed it to the extent that afterwards you went and got a manicure.
>
> . . .I can only come to one conclusion, Ms. Williams, and I've never said this in my tenure as a judge, but [the AUSA] was right, you were wicked, you were evil. You knowingly and seemingly with pleasure engaged in a regular practice of torturing Talia, a girl who is five -- four and turned five while in your custody, barely 40 pounds.

ECF No. 2938 at PageID #67102-105.

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release. And, even if she did, the court would deny the motion taking into account the relevant § 3553(a) factors.

///

///

///

11

## IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion for compassionate release, ECF No. 2933, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 10, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Williams,* Cr. No. 06-00079 JMS, Order Denying Defendant's Motion for Compassionate Release, ECF No. 2933